# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

DEMERIA BALDWIN, et al.,

        Plaintiffs,

   v.

MICHAEL GERIA, D.O., et al.,

        Defendants.

No. 1:19-cv-20894

**OPINION**

---

**<u>APPEARANCES</u>**:

Martin T. McDonough
THE MCDONOUGH LAW OFFICE
13 West Avenue
Suite A
Woodstown, NJ 08098

    *On behalf of Plaintiffs*.

Ben Kuruvilla
U.S. DEPARTMENT OF JUSTICE
   OFFICE OF THE U.S. ATTORNEY
970 Broad Street
Suite 700
Newark, NJ 07102

Elizabeth Pascal
Peter Gregory Vizcarrondo
U.S. DEPARTMENT OF JUSTICE
   OFFICE OF THE U.S. ATTORNEY
401 Market Street
P.O. Box 2098
Camden, NJ 08101

    *On behalf of Defendants Michael Geria, D.O., and the United States of America.*

Thomas J. Heavey
GROSSMAN & HEAVEY
1608 Highway 88 West
Suite 200
Brick, NJ 08724

> *On behalf of Defendants Anastasia J. Hawkins, D.O., Lee Paulson, D.O., Kaitlin
> Steffenhagen, D.O., Inspira Health Network, Inc., and Inspira Medical Centers, Inc.*

**O'HEARN, District Judge.**

## INTRODUCTION

This matter comes before the Court on the Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56 by Defendants Anastasia J. Hawkins, D.O., Lee Paulson, D.O., Kaitlin Steffenhagen, D.O., and Inspira Medical Centers, Inc. (collectively, "Moving Defendants"). (ECF No. 38). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Defendants' Motion is **GRANTED**.

## I.    BACKGROUND

The facts set forth herein related to this Motion are undisputed. On May 23, 2017, Plaintiff Demeria Baldwin ("Baldwin") gave birth to her and Plaintiff Alexander Bien-Aime's ("Bien-Aime") daughter, minor Plaintiff A.B. ("A.B."), at Inspira Medical Center ("Inspira") in Vineland, New Jersey. (Exhibit C, ECF No. 38-1 at 7).[1] A.B.'s delivery was indisputably complicated. At birth, A.B. was unable to breathe, cry, or move. (Exhibit D, ECF No. 38-1 at 19). Doctors immediately applied resuscitative measures. (ECF No. 38-1 at 19). She was whisked to the neonatal intensive care unit ("NICU") and soon transferred to Thomas Jefferson University Hospital in Philadelphia, Pennsylvania, for additional testing and care. (ECF No. 38-1 at 19).

---

[1]   In the interest of clarity, the Court's citations to the record refer to the page numbers of Attachment 38-1, not to the page numbers of the underlying documents within that Attachment.

There, doctors diagnosed her with severe diffuse hypoxic ischemic encephalopathy ("HIE"), a serious birth complication caused by impaired blood and oxygen delivery to the brain. (Exhibit C, ECF No. 38-1 at 7). Forty to sixty percent of newborns born with HIE die within two years or are left with severe disabilities.[2]

A.B., now nearly five years old, unfortunately has been left with severe disabilities. She requires nursing care twenty-four hours per day, seven days per week. She depends on a ventilator to breathe, a feeding tube to eat, and a wheelchair to move. She is nonverbal and suffers severe sensory deficits. Her brain damage and related disabilities are likely permanent. (ECF No. 38-1 at 7).

A.B.'s father, Bien-Aime, was present in the delivery room at the time of her birth. (Exhibit D, ECF No. 38-1 at 18). Upon delivery, he observed that A.B. neither cried nor moved, and noticed that she did not open her eyes. (ECF No. 38-1 at 19). At that time, Bien-Aime, a forklift operator with a high school education, had no medical training. (ECF No. 38-1 at 16). He had no concerns that anything was wrong before or after the birth, testifying that he was not worried and understood that the Inspira staff was "doing what they [were] trying to do." (ECF No. 38-1 at 18). He recalls no conversations with medical personnel at Inspira explaining his daughter's condition. (ECF No. 38-1 at 19). When A.B. was transferred to the NICU, he "guess[ed]" that this was because she could not breathe on her own. (ECF No. 38-1 at 19). All the same, he "didn't know things like that" at the time. (ECF No. 38-1 at 18).

Bien-Aime later received training from the staff at Weisman Children's Rehabilitation Hospital—where A.B. had been transferred before being released to her parents—so that he could

---

[2]   *See* Kimberly A. Allen & Debra H. Brandon, *Hypoxic Ischemic Encephalopathy: Pathophysiology and Experimental Treatments*, 11 NEWBORN & INFANT NURSING REVS. 125–33 (2011), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3171747/.

assist in A.B.'s at-home care. (ECF No. 38-1 at 20–21). Today, Bien-Aime, by choice, no longer sees A.B. nor assists in her care, although he continues to pay child support to her mother, Brown. (ECF No. 38-1 at 21). Bien-Aime reports having experienced profound distress due to his daughter's condition. (Exhibit C, ECF No. 38-1 at 7). He has not, however, sought mental health care or received a clinical diagnosis of a mental health condition since his daughter's birth. (Exhibit D, ECF No. 38-1 at 21).

## II.   **PROCEDURAL HISTORY**

On November 29, 2019, Baldwin, Bien-Aime, and A.B., through her mother, filed this action against Defendants Michael Geria, D.O., Anastasia J. Hawkins, D.O., Lee Paulson, D.O., Kaitlin Steffenhagen, D.O., Inspira Health Network, Inc., Inspira Medical Centers, Inc., and the United States,[3] alleging the doctors' and hospital's negligence and malpractice in A.B.'s delivery, as well as related claims. (Complaint, ECF No. 1). Plaintiffs amended their Complaint to properly identify Inspira and its corporate parent on March 2, 2020. (Amended Complaint, ECF No. 12). The Moving Defendants filed their Answer, including cross-claims against Defendants Michael Geria, D.O., and the United States, on March 5, 2020. (Moving Defendants' Answer, ECF No. 13). The United States filed its Answer to Plaintiffs' and Moving Defendants' claims, as well as its own counterclaims against Moving Defendants, on July 1, 2020. (United States's Answer, ECF

---

[3]  Defendant Michael Geria, D.O. ("Dr. Geria") was at all relevant times simultaneously employed by Inspira and CompleteCare Women's Medical Professionals ("CompleteCare"), a federally-supported health facility. As such, CompleteCare is a community health center subject to the Federal Tort Claims Act ("FTCA" or "the Act"), 28 U.S.C. §§ 1346(b), 2671–2680, under which the United States is liable for the health center's acts and the acts of its employees, including Dr. Geria. *See* 42 U.S.C. § 233. Accordingly, Plaintiffs filed their Complaint in this Court after exhausting the Act's administrative requirements:  Plaintiffs filed—and subsequently amended— a Standard Form 95 Administrative Claim, which was denied on July 30, 2019, and then filed this suit within six months of the administrative denial, (Amended Complaint, ECF No. 12 at 4). *See* 28 U.S.C. § 2401(b).

No. 21). After over a year of discovery, Moving Defendants filed the present Motion on July 13, 2021 (ECF No. 38), to which Plaintiffs responded (ECF No. 47), and Moving Defendants then replied (ECF No. 48).[4]

### III.   LEGAL STANDARD

Courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 346 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *Id.* A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Id.* The nonmoving party, however, must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

### IV.   DISCUSSION

#### A.  Jurisdiction

Plaintiffs' Amended Complaint asserts negligence claims under New Jersey law against Moving Defendants, alleging their medical malpractice in A.B.'s complicated birth. As noted

---

[4] While this Motion was filed prior to the close of fact discovery (ECF No. 44), fact discovery has since closed and Plaintiff does not argue that the Motion is premature.

5

above, this Court has jurisdiction over Plaintiffs' claims against Defendants Michael Geria, D.O., and the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. *See supra* note 2. Because Plaintiffs' claims against Moving Defendants arise from "a common nucleus of operative fact," the Court exercises its supplemental jurisdiction under 28 U.S.C. § 1367 with respect to those claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Moving Defendants now have moved for summary judgment under Federal Rule 56 only to the extent that A.B.'s father, Bien-Aime, seeks damages for emotional distress caused by their alleged negligence. For the reasons that follow, the Court grants that Motion.

### B.  Bien-Aime's Claims for Negligent Indirect Infliction of Emotional Distress

In addition to the traditional tort action for the intentional infliction of emotional distress, New Jersey law recognizes, in limited circumstances, a cause of action for a plaintiff who has experienced severe emotional distress caused indirectly by a defendant's negligence. *Portee v. Jaffee*, 417 A.2d 521, 528 (N.J. 1980). In *Portee*, the Supreme Court of New Jersey permitted recovery of damages by a mother who watched her son slowly die after being crushed in an elevator accident caused by the defendant's negligence. *Id.* The court held that a plaintiff could maintain a claim for negligent indirect infliction of emotional distress when "(1) the death or serious physical injury of another [is] caused by defendant's negligence; (2) a marital or intimate familial relationship [exists] between plaintiff and the injured person; (3) [plaintiff observed] the death or injury [of the victim] at the scene of the accident; and (4) [plaintiff suffered] severe emotional distress." *Id.*

Although the typical *Portee* claim arises when a family member witnesses the death or catastrophic injury of a loved one in some horrific accident, *see Frame v. Kothari*, 560 A.2d 675, 678 (N.J. 1989) (collecting cases), the Supreme Court of New Jersey has extended the availability

of recovery for negligent indirect infliction of emotional distress to cases of medical malpractice in certain limited circumstances as well. *Id.* at 681. In *Frame*, the court recognized that "[r]arely will a member of the patient's family contemporaneously observe the immediate consequences of the defendant's [malpractice], and even more rarely will the results of the [malpractice] be the injury or death of a loved one contemplated by the gruesome scene portrayed in *Portee*," but went on to hold that "if a family member witnesses the physician's malpractice, observes the effect of the malpractice on the patient, and immediately connects the malpractice with the injury, that may be sufficient to allow recovery for the family member's emotional distress." *Id.* at 680–81.

In reaching its conclusion in *Frame*, the court expressed its agreement with the Supreme Court of California's holding in a similar case that "when there is observation of the defendant's conduct and the [patient]'s injury and *contemporaneous* awareness the defendant's conduct or lack thereof is causing harm to the [patient], recovery is permitted." *Id.* (quoting *Ochoa v. Superior Court*, P.2d 1, 8 (Cal. 1985)) (emphasis added). Both courts reasoned that the immediate connection of a doctor's malpractice to a loved one's injury caused by that malpractice creates the "abnormal" emotional shock that justifies the recovery of damages, as distinguished from simply "receiving news that a loved one has been injured or has died," which is "the type of experience for which in a general way one is prepared, an experience which is common." *Id.* (quoting *Ochoa*, P.2d at 5 n.6); *see also Carey v. Lovett*, 622 A.2d 1279, 1286 (N.J. 1993) ("[T]he death or serious injury of an intimate family member will always be expected to threaten one's emotional welfare. Although such emotional distress is real, even severe, we have allowed recovery only for negligent conduct which strikes at the plaintiff's basic emotional security." (internal quotations and citations omitted)).

Accordingly, to distinguish the abnormal cases from the common experience, New Jersey

courts apply a modified version of the *Portee* test for negligent indirect infliction of emotional distress claims based on a defendant's medical malpractice. These claims "must be based on evidence demonstrating that the victim was (1) a marital or intimate family member of the claimant, and that the claimant (2) witnessed the malpractice, and (3) *immediately connected or associated the malpractice with the injury*, and (4) as a result, suffered severe emotional distress." *Gendek v. Poblete*, 654 A.2d 970, 974–75 (N.J. 1995) (citing *Frame*, 560 A.2d at 678) (emphasis added). The updated "special requirements" at step three of this analysis are strictly applied. *Id.* at 973 (citing *Frame*, 560 A.2d at 682 (Wilentz, C.J., and Garibaldi, J., concurring)).

Here, Moving Defendants argue that they are entitled to partial summary judgment because Bien-Aime cannot meet the strictly-applied requirements of step three. (Motion for Partial Summary Judgment, ECF No. 38 at 6–11). Even considering the record—over which there is no dispute between the parties as to any of the material facts related to this Motion—in the light most favorable to Bien-Aime, the Court agrees. Bien-Aime was present at the time of his daughter's birth and observed his daughter's condition upon delivery: she neither cried nor moved and did not open her eyes. He then saw the efforts of Inspira's personnel to resuscitate A.B. He watched as they took her to the NICU, and later to Thomas Jefferson University Hospital. But at no point while these events took place—during which the Moving Defendants' alleged malpractice might have occurred—did Bien-Aime connect or associate Moving Defendants' actions with her condition. Indeed, he consistently testified in deposition that he was not worried throughout the ordeal. (Exhibit D, ECF No. 38-1 at 18). He instead understood the medical staff to be "doing what they [were] trying to do" to help his daughter. (ECF No. 38-1 at 18). He never experienced that abnormal shock—distinct from that common "experience for which in a general way one is prepared," *Frame*, 560 A.2d at 681—for which New Jersey law permits recovery. These facts are

8

all undisputed and lead to the conclusion that Bien-Aime cannot recover in this case.

Bien-Aime argues that the reason he was not immediately shocked by his daughter's condition was that he lacked the necessary medical knowledge to recognize its seriousness. (Brief in Opposition, ECF No. 47 at 11–15). Unfortunately, however, accepting this as true further supports denying his recovery, not permitting it. If Bien-Aime lacked the knowledge at the time to understand his daughter's condition, he was incapable of experiencing the *contemporaneous* connection that the law requires. Instead, he had to endure the difficult, but unfortunately common, experience of receiving bad news from the doctors as to his loved one's condition and prognosis. *See Frame*, 560 A.2d at 680–81 (contrasting the shock of immediately connecting malpractice to injury with receiving bad news from a doctor). This type of distress—which the Court does not doubt can be severe—cannot support a *Portee* claim under New Jersey law.[5]

None of the foregoing should be taken as a minimization of Bien-Aime's traumatic experience. The birth of a child—a first child, no less—should be a moment of unbridled joy. Having to immediately confront the challenges his daughter would face due to her profound disabilities forever took that from Bien-Aime. While acknowledging this type of pain, the *Frame* court was forced to engage in the judicial task of line-drawing, which always risks criticism for arbitrariness and unfairness. In that endeavor, the court weighed the need for remedies with the unacceptable prospect of exposing healthcare providers to unlimited liability. This Court is bound to apply New Jersey law as interpreted by the New Jersey Supreme Court. Striking the balance as best it could, the *Frame* court drew a boundary that leaves Bien-Aime without a cognizable claim

---

[5] Having reached this conclusion, the Court does not reach and offers no opinion regarding Moving Defendants' second argument in support of summary judgment, that Bien-Aime's emotional distress is not sufficiently severe because he has not sought mental health care, (Motion for Partial Summary Judgment, ECF No. 38 at 11–12).

based upon the undisputed facts.

## **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Moving Defendants' Motion for Partial Summary Judgment. (ECF No. 38). An appropriate Order accompanies this Opinion.

*/s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**